# Exhibit A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Robert Half INTERNATIONAL

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

April Washington, individually and as a representative of the classes

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED FILED
SAN MATEO COUNTY

JAN 2 3 2015

Clerk of the Superior Cour
By **S. YAMBING**
D..... Y CLERK

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of Cal., County of San Mateo, Hall of Justice & Records,<br>400 County Center, Redwood City, CA 94063 | **CASE NUMBER:**<br>*(Número del Caso)*<br>**CIV 5 3 2 2 0 7** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Matthew Helland, Nichols Kaster LLP, One Embarcadero Ctr, Ste 720, San Francisco, CA 94111, 4152777723

| DATE: JAN 2 3 2015<br>*(Fecha)* | JOHN C. FITTON | Clerk, by<br>*(Secretario)* | SOCORRO YAMBING | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served<br>1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☑ on behalf of *(specify):* Robert Half Int'l, Inc.<br><br>under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)<br>       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)<br>       ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)<br>       ☐ other *(specify):*<br>4. ☑ by personal delivery on *(date):* |

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

COPY

NICHOLS KASTER, LLP
Matthew C. Helland, CA Bar No. 250451
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Phone: (415) 277-7235
Fax: (415) 277-7238

NICHOLS KASTER, PLLP
Kai H. Richter, MN Bar No.0296545*
krichter@nka.com
Daniel C. Bryden, MN Bar No. 0302284*
dbryden@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
* *pro hac vice* motions forthcoming

Attorneys for Individual and Representative Plaintiff

**ENDORSED FILED**
**SAN MATEO COUNTY**

JAN 2 3 2015

Clerk of the Superior Court
By    S. YAMBING
          Y CLERK

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SAN MATEO

| | |
|---|---|
| APRIL WASHINGTON, individually and as a representative of the classes,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT HALF INTERNATIONAL,<br><br>Defendant. | Case No.: **CIV 5 3 2 2 0 7**<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (Counts 1 and 2)<br><br>**DEMAND FOR JURY TRIAL** |

April Washington ("Plaintiff"), on behalf of herself and the Classes set forth below, and in the public interest, brings the following Class Action Complaint against Robert Half International ("Robert Half" or "RHI" or "Defendant") pursuant to the Fair Credit Reporting Act ("FCRA" or "Act").

**INTRODUCTION**

1.      Robert Half is a Fortune 500 company engaged in the business of providing professional staffing services.

2.      In the course of its business, Robert Half routinely obtains and uses consumer reports for employment purposes, including in connection with background checks and drug screenings that are conducted for the purpose of evaluating individuals for employment purposes.

3.      Because the livelihood of many people depends on the accuracy of consumer reports, the procurement, use, and content of those reports is strictly regulated by the FCRA.

4.      Under the FCRA, it is illegal to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless… a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is often referred to as the stand-alone disclosure requirement.

5.      This disclosure requirement is important because consumers need to know when they are going to be evaluated for employment purposes based on a consumer report. It is critical that consumers are aware that a report is going to be procured for employment purposes so that, if they choose, they can request a copy of the report to proactively ensure that it does not contain any errors. Up to twenty-six percent of consumers have material errors in their consumer reports.[1] Moreover, even if a report

---

[1] U.S. Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003* (Dec. 2012), available online at: http://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accurate-credit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf (last accessed Jan. 21, 2015).

1  does not contain errors, it is important that consumers are aware that a report is going to

2  be procured, so that they can address and provide context for any reported information.

3      6.      Robert Half has regularly violated 15 U.S.C. § 1681b(b)(2)(A)(i) by

4  procuring consumer reports on Plaintiff and other class members for employment

5  purposes, without first making proper disclosures in the format required by the FCRA.

6  Specifically, Robert Half violated the FCRA by failing to provide a stand-alone disclosure

7  to affected individuals stating that it would be procuring a consumer report on them for

8  employment purposes.

9      7.      Robert Half is well-aware of the FCRA's stand-alone disclosure

10  requirement. Robert Half was on notice of this requirement from (among other things) the

11  unambiguous language of the Act, case law interpreting the Act, published Federal Trade

12  Commission ("FTC") guidance, and guidance from at least one of the consumer reporting

13  agencies that furnished it with consumer reports, HireRight, Inc. ('HireRight").

14      8.      In spite of its knowledge and awareness of the Act's stand-alone disclosure

15  requirement, Robert Half has repeatedly and systematically violated that requirement, in

16  deliberate and/or reckless disregard of the rights of Plaintiff and other class members.

17      9.      Based on Robert Half's willful violations of the Act's stand-alone

18  disclosure requirement, Plaintiff asserts a FCRA claim on behalf of herself and the

19  Classes set forth in Paragraph 42 of this Complaint.[2] Pursuant to 15 U.S.C. § 1681n(a)

20  and other applicable law, Plaintiff seeks statutory damages, punitive damages, attorneys'

21  fees, litigation expenses and costs, and other appropriate relief on behalf of herself and the

22  Classes.

23                                    **THE PARTIES**

24      10.     Individual and representative Plaintiff April Washington is a resident of

25  Little Rock, Arkansas.

26

27  [2] Plaintiff reserves the right to alter or amend the class definitions, or propose other or
    additional Classes, after discovery.

28

-3-

1    11.    Defendant Robert Half is a Delaware corporation headquartered in Menlo

2  Park, California. Defendant "pioneered the concept of professional staffing services" and

3  had revenues of $4.2 billion in 2013. *See* www.roberthalf.com/fact-sheet (last visited

4  January 22, 2015) (attached as Exhibit A).

5                          **JURISDICTION AND VENUE**

6    12.    This Court has jurisdiction over Plaintiff's claims based on concurrent

7  jurisdiction under 15 U.S.C. § 1681p and Cal. Code. Civ. Proc § 410.10.

8    13.    Venue is proper in the County of San Mateo because a substantial part of

9  the events giving rise to this claim occurred in this County, and Defendant operates in this

10  County.

11                          **STATUTORY BACKGROUND**

12    14.    Enacted in 1970, the FCRA's passage was driven in part by two related

13  concerns: first, that consumer reports were playing a central role in people's lives at

14  crucial moments, such as when they applied for a job or credit, and when they applied for

15  housing. Second, despite their importance, consumer reports were unregulated and had

16  widespread errors and inaccuracies.

17    15.    While recognizing that consumer reports play an important role in the

18  economy, Congress wanted consumer reports to be "fair and equitable to the consumer"

19  and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of

20  consumer reports. 15 U.S.C. § 1681.

21    16.    The FCRA broadly defines a "consumer report" as "any written, oral or

22  other communication of any information by a consumer reporting agency bearing on a

23  consumer's... character, general reputation, personal characteristics, or mode of living..."

24  that, among other things, is expected to be used "for employment purposes." 15 U.S.C. §

25  1681a(d)(1). In addition to covering criminal background checks, FTC made clear in

26  1998 that the results of a drug test would be a "communication" bearing on the subject's

27  "character... personal characteristics, or mode of living," and therefore a "consumer

28

-4-

1  report" under the FCRA if communicated by consumer reporting agency. *See* FTC
2  Advisory Opinion to Islinger, attached hereto as Exhibit B.

3       17.    Congress was particularly concerned about the use of consumer reports by
4  employers to reject otherwise qualified job applicants or to take other adverse action
5  against employees. Accordingly, Congress required employers to make a clear and
6  conspicuous written disclosure to employees and job applicants, in a document that
7  consists *solely of the disclosure*, that a consumer report may be obtained for employment
8  purposes. 15 U.S.C. § 1681b(b)(2) (emphasis added). This is commonly referred to as
9  the "stand-alone disclosure" requirement.

10      18.    As discussed below, Robert Half routinely violates the FCRA by failing to
11  provide the required stand-alone disclosure to employees and job applicants. Specifically,
12  Robert Half fails to make a compliant disclosure when obtaining consumer reports in
13  connection with background checks and drug screenings that are conducted for
14  employment purposes. As set forth below, these failures constitute separate and
15  independent violations of the FCRA.

16          **ALLEGATIONS RELATING TO PLAINTIFF APRIL WASHINGTON**
17      *Consumer Report in Connection with Background Check for Employment Purposes*

18      19.    Plaintiff applied for employment with Robert Half in the spring of 2014
19  (around late May or early June of 2014). Based on her application, Plaintiff was initially
20  offered a position, but Robert Half required her to complete a background check before
21  beginning the position. To that end, pursuant to its standard policies and practices, Robert
22  Half sent Plaintiff a multi-page "Notice and Authorization to Obtain Criminal Background
23  Check For Employment Purposes" ("Background Check Authorization"). *See* Exhibit C.

24      20.    The Background Check Authorization that Robert Half provided to
25  Plaintiff did not satisfy the FCRA's stand-alone disclosure requirement, as it did not
26  consist solely of a disclosure that a consumer report may be obtained for employment
27  purposes. To the contrary, the Background Check Authorization contained numerous
28  extraneous statements, including the following:

-5-

1    • A statement that the applicant understands that Robert Half "will use the
2    information contained in these reports as a factor in determining my
3    eligibility for employment and, if [the applicant] become[s] an employee,
4    in determining my eligibility for placement and other employment
5    purposes";

6    • An authorization to release the results of any background check "to any
7    client" for which the applicant is "being considered for placement";

8    • An acknowledgment that the applicant received "an accompanying
9    document entitled 'A Summary of Your Rights Under the Fair Credit
10   Reporting Act' and the Provisions of California Civil code 1786.22, which
11   apply to me if I am a California resident";

12   • A further acknowledgment that the applicant read and understood the
13   Disclosure Form and "Summary of Your Rights Under the Fair Credit
14   Reporting Act";

15   • A statement that the applicant authorized "without reservation, any law
16   enforcement agency, administrator, state or federal agency, institution,
17   school or university (public or private), information service bureau or
18   employer to furnish any and all background information requested by any
19   consumer reporting agency acting on behalf of RHI."

20   • A purported agreement that a "facsimile ('fax') or photographic copy of the
21   authorization shall be as valid as the original"; and

22   • An acknowledgement that the applicant has "also reviewed the special state
23   provisions set forth on page 2 of this Notice and Authorization and that I
24   agree that any such provisions apply to me."[3]

25   21.    Even though this Background Check Authorization was non-compliant and
26   failed to satisfy the FCRA's stand-alone disclosure requirement, Robert Half contracted

27   _____
     [3] The following page lists state law provisions for residents of seven different states.
28

-6-

1  with HireRight to carry out a background check on Plaintiff. HireRight is a consumer

2  reporting agency.

3      22.    HireRight returned a consumer report to Robert Half that included criminal

4  convictions for an individual in Baltimore, Maryland. That individual, April Lachelle

5  Washington, is not the same person as Plaintiff April Laqueena Washington. Plaintiff is

6  from Arkansas and has never lived in Maryland.

7      23.    Robert Half initially offered Plaintiff a job working at Windstream

8  Communications, but Plaintiff was unable to start her job based on the erroneous

9  background check.

10     24.    Plaintiff disputed the background check with HireRight and informed

11  Robert Half that the information on the consumer report was incorrect. HireRight

12  eventually corrected its report, but by the time the correction was made, the position was

13  no longer available.

14      ***Consumer Report in Connection with Drug Test for Employment Purposes***

15     25.    Pursuant to its standard policies and procedures, Robert Half also required

16  Plaintiff to complete a drug test as a condition of employment. Plaintiff satisfied this

17  requirement, and subjected herself to a drug test at Robert Half's request.

18     26.    Robert Half ordered this drug test through General Information Services,

19  LLC ("GIS"), a large consumer reporting agency, which contracted with a third party to

20  perform the laboratory analysis. GIS then communicated the results of the drug test to

21  Robert Half.

22     27.    Before conducting the drug test, Robert Half gave Plaintiff a form

23  captioned "Consent to Substance Abuse Testing." This form did not remotely resemble

24  the stand-alone disclosure required by the FCRA. Among other things, the form:

25     •    Required Plaintiff to acknowledge that refusal to take the drug test could

26          make her ineligible for the employment;

27

28

-7-

1    •    Required Plaintiff to acknowledge that a positive result could make her

2         ineligible for employment, or for worker's compensation benefits if the

3         positive result occurred after a work-related accident;

4    •    Included a purported liability release that covered numerous parties that

5         could be involved in performing the drug test; and

6    •    Included other extraneous information.

7    Robert Half's "Consent to Substance Abuse Testing" is attached hereto as Exhibit D.

8    **ALLEGATIONS RELATING TO DEFENDANT ROBERT HALF**

9         28.    Robert Half routinely procures consumer reports as part of its standard

10   employment screening process, in connection with background checks and drug

11   screenings conducted for the purpose of evaluating individuals for employment purposes.

12   Robert Half did not procure Plaintiff's consumer report or the reports of other class

13   members in connection with any investigation of suspected misconduct relating to

14   employment, or compliance with federal, state, or local laws and regulations, the rules of a

15   self-regulatory organization, or any preexisting written policies of the employer.

16        29.    Robert Half does not compile these consumer reports in-house.  Rather,

17   Robert Half relies on outside consumer reporting agencies, including HireRight and GIS,

18   to obtain this information and report it to Robert Half.  These reports constitute "consumer

19   reports" for purposes of the FCRA.

20        30.    The FCRA requires that, prior to procuring a consumer report for

21   employment purposes, the recipient of the report must certify to the consumer reporting

22   agency that it will comply with the FCRA's stand-alone disclosure requirements.  *See* 15

23   U.S.C. § 1681b(b)(1).  Accordingly, Robert Half had to certify to its consumer reporting

24   agencies that it would comply with the stand-alone disclosure requirements of the FCRA.

25        31.    The FCRA also requires users of consumer reports to certify the purpose

26   for which they are obtaining the reports.  Accordingly, Robert Half also had to certify to

27   its consumer reporting agencies that it was obtaining these reports for employment

28   purposes.

-8-

32.    Notwithstanding its duty to comply with federal law and certify its compliance with the FCRA, Robert Half routinely and regularly violates the FCRA in connection with the consumer reports that it obtains in connection with background checks and drug screenings for employment purposes, because it does not provide affected individuals with a clear and conspicuous written disclosure, in a document consisting *solely of the disclosure*, that a consumer report may be obtained about them for employment purposes.

33.    Robert Half was well-aware of the Act's stand-alone disclosure requirement from numerous sources, but willfully violated that requirement in deliberate and/or reckless disregard of its legal obligations and the rights of Plaintiff and other class members.

34.    The FTC has repeatedly warned employers that the stand-alone disclosure required by the Act may not include extraneous information. *See Advisory Opinion to Steer* (Oct. 21, 1997), available at 1997 WL 33791227 ("[S]uch a document should include nothing more than the disclosure and the authorization for obtaining a consumer report."); *Advisory Opinion to Coffey* (Feb. 11, 1998), available at 1998 WL 34323748 ("It is our view that Congress intended that the disclosure not be encumbered with extraneous information."); *Advisory Opinion to Hauxwell* (June 12, 1998), available at 1998 WL 34323756 ("[T]he form should not contain any extraneous information").

35.    Courts that have addressed the Act's stand-alone disclosure requirement have reiterated that that extraneous information may not be included in the disclosure. *See, e.g., Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *8 (D. Md. Jan. 25, 2012) ("Had Congress intended for employers to include additional information in [disclosure] documents, it could easily have included language to that effect in the statute. It did not do so, however, and its silence is controlling.") (internal quotations omitted); *Reardon v. Closetmaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"). Notably, the above-cited

-9-

1  decisions, as well as the FTC advisory opinions cited above, were issued well ***before***

2  Robert Half obtained consumer reports about Plaintiff for employment purposes.

3       36.    HireRight also offers guidance to its clients (including Robert Half)

4  regarding their FCRA compliance and disclosure responsibilities. For example, HireRight

5  states on its website that it "provide[s] FCRA compliance information and online

6  templates of all letters and forms necessary to comply with FCRA employment

7  background screening requirements[.]"    www.hireright.com/resources/fcra-compliance

8  (last visited Jan. 21, 2015) (attached as Exhibit E).

9       37.    Despite the aforementioned guidance from HireRight, federal courts, and

10 the FTC, and contrary to the unambiguous mandate of 15 U.S.C. § 1681b(b)(2)(A)(i),

11 Robert Half purposely inserted extraneous language into its disclosures that is not

12 permitted under the Act.

13                    **CLASS ACTION ALLEGATIONS**

14      38.    Plaintiff asserts her FCRA claims in this Complaint on behalf of the two

15 proposed classes, defined as follows:

16      **Background Check Class:** All individuals about whom Robert Half

17      obtained a consumer report in connection with a background check for
        employment purposes on or after January 23, 2013.

18
        **Drug Screening Class:** All individuals about whom Robert Half obtained
19      a consumer report in connection with a drug screening for employment
        purposes on or after January 23, 2013.
20

21 Plaintiff asserts her FCRA claim in Count I on behalf of the Background Check Class, and

22 her FCRA claim in Count II on behalf of the Drug Screening Class.

23      39.    This action is brought, and may properly be maintained, as a class action

24 under Cal. Code of Civil Procedure §382 because there is a well-defined community of

25 interest in the litigation, and the proposed Classes are easily ascertainable from

   Defendant's records..
26

27      40.    Numerosity:   The Classes are so numerous that joinder of all class

28 members is impracticable.   Robert Half has thousands of employees, and regularly

                                    -10-

1 | procures consumer reports in connection with background checks and drug screenings for
2 | employment purposes.

3 |     41.     Typicality:     Plaintiff's claims are typical of other class members' claims.
4 | It is typical for Robert Half to procure consumer reports in connection with background
5 | checks and drug screenings for employment purposes, and Robert Half typically does not
6 | provide the stand-alone disclosure required by the FCRA when obtaining such consumer
7 | reports for employment purposes.  The FCRA violations suffered by Plaintiff are typical
8 | of those suffered by other class members, and Robert Half treated Plaintiff consistently
9 | with other class members in accordance with its standard policies and practices.

10 |     42.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the
11 | Classes, and has retained counsel experienced in complex class action litigation, including
12 | litigation involving the FCRA.

13 |     43.     Commonality: Common questions of law and fact exist as to the members
14 | of the Classes, which predominate over any individualized questions solely affecting
15 | particular class members.  These common questions include:

16 |          a.     Whether Robert Half obtains consumer reports in connection with
17 |                 background checks for employment purposes;

18 |          b.     Whether Robert Half obtains consumer reports in connection with
19 |                 drug screenings for employment purposes;

20 |          c.     Whether Robert Half's Background Check Authorization satisfies
21 |                 the   stand-alone   disclosure   requirements   of   15   U.S.C.   §
22 |                 1681b(b)(2)(A)(i);

23 |          d.     Whether Robert Half's Consent to Substance Abuse Testing
24 |                 satisfies the stand-alone disclosure requirements of 15 U.S.C. §
25 |                 1681b(b)(2)(A)(i)

26 |          e.     Whether Robert Half violated the FCRA by procuring consumer
27 |                 report information in connection with background checks for

28 |

-11-

employment purposes without making proper disclosures in the format required by the Act;

f. Whether Robert Half violated the FCRA by procuring consumer report information in connection with drug screenings for employment purposes without making proper disclosures in the format required by the Act;

g. Whether Robert Half was on notice of the stand-alone disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i);

h. Whether Robert Half's violations of the FCRA were willful;

i. The proper measure of statutory damages;

j. The proper measure of punitive damages; and

k. Whether Robert Half should be enjoined from engaging in further violations of the FCRA.

44. Class certification is appropriate under Cal. Code Civ. Proc. § 382 because questions of law and fact common to the Classes predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

-12-

## CLAIMS FOR RELIEF
### COUNT I
#### Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)
**Regarding Consumer Reports Obtained in Connection with Background Checks**
**(Asserted on Behalf of the Background Check Class)**

45.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

46.     Robert Half procured a "consumer report," as defined by the FCRA, on Plaintiff and other Background Check Class members, in connection with the background checks that it conducted on such Class members.

47.     These consumer reports were obtained for employment purposes.

48.     Prior to obtaining these consumer reports, Robert Half did not provide Plaintiff and other Background Check Class members with a clear and conspicuous disclosure in writing, in a document that consisted solely of the disclosure, that a consumer report may be obtained for employment purposes.

49.     Robert Half's Background Check Authorization does not satisfy the stand-alone disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because, among other things, the Background Check Authorization contains extraneous statements and information.

50.     Robert Half violated the FCRA by procuring consumer reports relating to Plaintiff and the other Background Check Class members without first making a proper stand-alone disclosure in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).

51.     The foregoing violations were willful. Robert Half acted in deliberate or reckless disregard of its legal obligations and the rights of Plaintiff and the other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

52.     Robert Half's willful conduct is reflected by, among other things, the following:

-13-

(a)   The FCRA was enacted in 1970, and Robert Half has failed to become compliant for more than 40 years;[4]

(b)   Robert Half is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

(c)   Robert Half knew or had reason to know that its conduct was inconsistent with the plain language of the FCRA, case law interpreting the Act, and FTC guidance.  Indeed, the "Summary of Rights [] Under the Fair Credit Reporting Act" that Robert Half purported to provide to Plaintiff and other class members expressly referenced the FTC's website;

(d)   Robert Half was on further notice of the disclosure requirements of the FCRA from its consumer reporting agencies, including HireRight, which offers guidance on FCRA compliance and disclosure responsibilities;

(e)   Robert Half certified to its consumer reporting agencies that it would comply with the disclosure requirements of the FCRA;

(f)   Robert Half voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

53.   Robert Half's violations of the FCRA were repeated and systematic.

54.   Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

---

[4] Robert Half was founded in 1948.  *See* Exhibit A.

-14-

1    55.    Plaintiff and the Background Check Class are also entitled to punitive

2    damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

3    56.    Plaintiff and the Criminal Background Check Class are further entitled to

4    recover their attorneys' fees and costs and expenses in this action, pursuant to 15 U.S.C. §

5    1681n(a)(3).

6                                        **COUNT II**
                            **Violation of 15 U.S.C. § 1681b(b)(2)(A)(i)**
7    **Regarding Consumer Reports Obtained in Connection with Drug Tests**
                  **(Asserted on Behalf of the Drug Screening Class)**
8

9    57.    Plaintiff re-alleges and incorporates by reference the allegations in the

10   preceding paragraphs.

11   58.    Robert Half procured a "consumer report," as defined by the FCRA, on

12   Plaintiff and other Drug Screening Class members, in connection with the drug screenings

13   that were conducted with respect to such Class members.

14   59.    These consumer reports were obtained for employment purposes.

15   60.    Prior to obtaining these consumer reports, Robert Half did not provide

16   Plaintiff and other Drug Screening Class members with a clear and conspicuous disclosure

17   in writing, in a document that consisted solely of the disclosure, that a consumer report

18   may be obtained for employment purposes.

19   61.    Robert Half's Consent to Substance Abuse Testing ("Consent") does not

20   satisfy the stand-alone disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because,

21   among other things, (1) the Consent includes a liability release; and (2) the Consent

22   contains extraneous statements and information.

23   62.    Robert Half violated the FCRA by procuring consumer reports relating to

24   Plaintiff and the other Drug Screening Class members without first making a proper stand-

25   alone disclosure in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).

26   63.    The foregoing violations were willful.  Robert Half acted in deliberate or

27   reckless disregard of its obligations and the rights of Plaintiff and the other Drug

28   Screening Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

-15-

64. Robert Half's willful conduct is reflected by, among other things, the following:

    (a)   The FCRA was enacted in 1970, and Robert Half has failed to become compliant for more than 40 years;

    (b)   Robert Half is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    (c)   Robert Half knew or had reason to know that its conduct was inconsistent with the plain language of the FCRA, case law interpreting the Act, and FTC guidance. Indeed, the "Summary of Rights [] Under the Fair Credit Reporting Act" that Robert Half purported to provide to Plaintiff and other class members expressly referenced the FTC's website;

    (d)   Robert Half was on further notice of the disclosure requirements of the FCRA from its consumer reporting agencies;

    (e)   Robert Half certified to its consumer reporting agencies that it would comply with the disclosure requirements of the FCRA;

    (f)   Robert Half voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

    (g)   Robert Half's violations of the FCRA were repeated and systematic; and

    (h)   Robert Half sought a release of liability from Plaintiff and other class members for its conduct relating to drug screening.

65. Plaintiff and the Drug Screening Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

-16-

66. Plaintiff and the Drug Screening Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

67. Plaintiff and the Drug Screening Class are further entitled to recover their attorneys' fees and costs and expenses in this action, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

68. WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

    a. Determining that this action may proceed as a class action under Cal. Code Civ. Proc. § 382;

    b. Designating Plaintiff as class representative for both Classes and designating Plaintiff's counsel as counsel for the Classes;

    c. Issuing proper notice to the Classes at Defendant's expense;

    d. Declaring that Defendant committed multiple, separate violations of the FCRA;

    e. Declaring that Defendant acted willfully, in deliberate or reckless disregard of the rights of Plaintiff and other class members under the FCRA;

    f. Awarding statutory damages as provided by the FCRA;

    g. Awarding punitive damages as provided by the FCRA;

    h. Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA; and

    i. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

69. Pursuant to Section 16, Article I of the California Constitution, and Cal. Code Civ. Proc. § 631, Plaintiff and the Classes demand a trial by jury.

-17-

1

2     Dated: January 23, 2015

Respectfully submitted,

NICHOLS KASTER, LLP

By: _Matthew Helland_

Matthew C. Helland

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTORNEY FOR INDIVIDUAL AND
REPRESENTATIVE PLAINTIFF

-18-

CLASS ACTION COMPLAINT, Case No.

EXHIBIT A


**Robert Half**°

# Fact Sheet

**Overview**

Founded in 1948, Robert Half pioneered the concept of professional staffing services. Robert Half once again was named to FORTUNE® magazine's list of "Most Admired Companies" (March 17, 2014). The company is traded on the New York Stock Exchange (symbol: RHI) and is a member of the S&P 500 index.

**Financial**

The company's revenues were $4.2 billion in 2013, versus $7 million in 1986.

**Professional Staffing Services**

Robert Half has seven divisions: Accountemps®, Robert Half® Finance & Accounting and Robert Half® Management Resources, for temporary, full-time and senior-level project professionals, respectively, in the fields of accounting and finance; OfficeTeam®, for highly skilled office and administrative support professionals; Robert Half® Technology, for information technology professionals; Robert Half® Legal, for temporary, project and full-time staffing of attorneys, paralegals and legal support personnel; and The Creative Group®, for interactive, design, marketing, advertising and public relations professionals.

**Risk & Business Consulting. Internal Audit.**

Robert Half is the parent company of Protiviti® Inc. Protiviti is a global business consulting firm that helps companies solve problems in finance, technology, operations, governance, risk and internal audit. The company and its independently owned member firms serve clients through a network of more than 75 locations in 25 countries.

**Facilities**

Headquarters: Menlo Park, Calif.
Robert Half has more than 400 staffing and consulting locations worldwide.

**Management**

Harold M. Messmer Jr., Chairman and CEO

M. Keith Waddell, Vice Chairman, President and CFO
Paul F. Gentzkow, President and COO-Staffing Services
Robert W. Glass, Executive Vice President, Corporate Development

**Connect with us**



© 2015 Robert Half All Rights Reserved. An Equal Opportunity Employer M/F/Disability/Veteran.

Robert Half
 Australia
Austria
 Belgium
 Brazil
 Canada
 Chile
 China
 France
 Germany
 Hong Kong
 Japan
 Luxembourg
 Netherlands
 New Zealand
 Singapore
 Switzerland
 UAE
 United Kingdom
 United States

# EXHIBIT B



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Islinger (06-09-98)

June 9, 1998

David G. Islinger, Esq.
Jackson, Lewis, Schnitzler & Krugman
Courthouse Plaza
60 Washington Street
Morristown, New Jersey 07960-6844

Re: Section 603(d) of the Fair Credit Reporting Act

Dear Mr. Islinger:

This is in response to your letter requesting the staff's opinion on a number of issues raised by the recent amendments to the Fair Credit Reporting Act (FCRA). Specifically, you ask whether reports received from a consumer reporting agency (CRA) regarding a consumer's criminal record and education, and any licenses held by the consumer are covered by the FCRA. You also inquire as to the status of drug tests obtained from a drug testing laboratory.

## 1. Do criminal background checks, educational background checks, and license checks provided by CRAs constitute consumer reports?

Yes. The definition of "consumer report" in Section 603(d)(1) is broad and includes information about an individual consumer's "character, general reputation, personal characteristics, or mode of living" when made by a CRA. Criminal histories, education, and licenses held by consumers all involve one or more of these factors. Accordingly, when CRAs provide such information, they are providing consumer reports and must comply with the FCRA. We note that a CRA that collects and provides factual information of the type discussed above, obtained through interviews with friends, neighbors, associates, or others with knowledge of the consumer, is making a particular type of consumer report known as an "investigative consumer report." In

that case, the CRA must follow the procedures set forth in Section 606 specifically for "investigative consumer reports" as well as those contained in Section 604(b) for "consumer reports." These procedures are discussed in the attached staff opinion letter (Beaudette, 6/9/98).

## 2. Are drug tests consumer reports?

When a drug lab provides the results directly to the employer, the test is not a "consumer report" under the FCRA. When an intermediary does so, a detailed factual analysis is needed to determine the answer. When a CRA provides the test results, it is clearly making a "consumer report" to the employer. We explain these responses below.

As discussed in response to your first question, the definition of "consumer report" in the FCRA covers a great deal of information other than credit information. Drug tests do bear on an individual's character, general reputation, personal characteristics, or mode of living. However, Section 603(d)(2) (A) of the FCRA excludes from the definition of "consumer report" any report "containing information solely as to transactions or experiences between the consumer and the person making the report." Since drug test reports constitute reports based on the experience of the laboratory (applying scientific methods to test urine or other samples from the consumer), these reports are not "consumer reports" covered by the FCRA when they are provided directly to the employer by the laboratory. The court in Hodge v. Texaco, Inc., 975 F.2d 1093, 1096 (5th Cir. 1992), reached the same conclusion.

Where an intermediary such as a drug counselor reports the results of a test done by a lab, the issue of whether the communication is a "consumer report" covered by Section 603(d) requires a detailed review of the facts. The "transactions or experiences" exception does not apply to the intermediary because the intermediary does not perform the analysis. The answer, therefore, turns on whether the intermediary is a "consumer reporting agency" as defined in Section 603(f) of the FCRA.(1) A party that "regularly engages . . . in the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties" is a CRA under that definition. If an intermediary contributes to (or takes any action that determines) the content of the information conveyed to an employer, we believe it is "assembling or evaluating" the information and thus qualifies as a CRA. However, if the inter-mediary is like the drug counselor in Hodge case cited above (975 F.2d at 1097) who simply "acted as a go-between" between the employer and drug lab, it does not appear to be a CRA. Thus, an intermediary that provides only mechanical services (such as arranging for a lab test, collecting and forwarding samples to the lab, and transmitting test results) probably would not be a CRA making a "consumer report." At the other end of the scale, an intermediary that retains copies of tests performed by drug labs and regularly sells this information to third parties for a fee is a CRA whose reports of drug test results are "consumer reports" covered by the FCRA.

If a drug test report is provided by a party that is indisputably a CRA because of the general nature of its business (e.g., a credit bureau or employment screening service), the report would clearly be a "consumer report" because the communication is made by a CRA and not covered by any of the exemptions from the definition set forth in Section 603(d).

I hope that this information is helpful to you. The opinions set forth in this letter represent the views of the staff of the Commission and do not necessarily represent the views of the Commission or any particular Commissioner.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

## Enclosure

1. As mentioned in our answer to question #1 above, one of the elements in the "consumer report" definition is that the communication be made by a CRA.



ftc.gov

# EXHIBIT C

 **Robert Half®**

### NOTICE AND AUTHORIZATION TO OBTAIN CRIMINAL BACKGROUND CHECK
### FOR EMPLOYMENT PURPOSES

As a condition of employment or placement by Robert Half International ("RHI"), I acknowledge and agree that RHI may obtain a criminal background check about me at any time during my employment with RHI or at the time I am being considered for placement by RHI for a temporary, contract or permanent position with RHI or RHI's clients. The results of this criminal background check may include written, oral, or other information about my character, general reputation, personal characteristics and mode of living. In addition, the criminal background check may include such information obtained through personal interviews of past or present employers, business or personal acquaintances, or others who may have knowledge concerning this information. I understand that RHI will use the information contained in these reports as a factor in determining my eligibility for employment and, if I become an employee, in determining my eligibility for placement and other employment purposes. In addition, I hereby authorize RHI to release the results of any criminal background check about me to any client for which I am being considered for placement.

Because a criminal background check is considered an "investigative consumer report," I understand that RHI will, upon my written request made within a reasonable period of time after my receipt of this document, make a complete and accurate disclosure to me of the nature and scope of the investigation requested. I also acknowledge that I have received the accompanying document entitled "A Summary of Your Rights Under the Fair Credit Reporting Act" and the Provisions of California Civil Code Section 1786.22, which apply to me if I am a California resident.

**AUTHORIZATION**
I acknowledge that I have read and understand this Notice and Authorization and A Summary of Your Rights Under the Fair Credit Reporting Act. I hereby authorize RHI to obtain a criminal background check" about me.

Similarly, I hereby authorize, without reservation, any law enforcement agency, administrator, state or federal agency, institution, school or university (public or private), information service bureau or employer to furnish any and all background information requested by any consumer reporting agency acting on behalf of RHI. I also agree that a facsimile ("fax") or photographic copy of this Authorization shall be as valid as the original.

By signing below, I acknowledge that I have also reviewed the special state provisions set forth on page 2 of this Notice and Authorization and that I agree to any such provisions that apply to me.

_____     _____
Applicant's/Employee's Signature          Date

_____
Print Name

October 2013

# **rh** Robert Half®

**NOTICE AND AUTHORIZATION TO OBTAIN CRIMINAL BACKGROUND CHECK
FOR EMPLOYMENT PURPOSES**

**For California Residents:**

**General Information Services, Inc.** located at 917 Chapin Road, Chapin, SC 29036, (877) 590- 4006, http://www.gis-background.com/ will be the consumer reporting agency providing these reports. Otherwise, the following consumer reporting agency will provide these reports.

Name: _____    Address: _____

Phone: _____    Web Address: _____

I understand that I may request a copy of any consumer report or investigative consumer report obtained by RHI about me by checking the box below. I further understand that I shall not receive a copy of any such report(s) unless I mark this box. I acknowledge that I have received the accompanying Provisions of California Civil Code Section 1786.22.

☐    I wish to receive a copy of any consumer report or investigative consumer report that RHI may obtain about me.

**For Maine Residents**: I understand that I may request from RHI the name, address, and telephone number of the nearest unit designated to handle inquiries of each consumer reporting agency issuing an investigative consumer report about me. I further understand that I may request from the consumer reporting agency a copy of any investigative consumer report obtained by RHI about me.

**For Massachusetts and New Jersey Residents**: In connection with "investigative consumer reports" obtained by RHI, I hereby confirm my understanding of the nature and scope of the investigation requested by RHI. I also understand that I may request from the consumer reporting agency a copy of any investigative consumer report obtained by RHI about me.

**For Minnesota and Oklahoma Residents**: I understand that I may request a copy of any consumer report (including investigative consumer reports) obtained by RHI about me. I further understand and agree that I shall not receive a copy of any such consumer report unless I mark the box appearing below.

☐    I wish to receive a copy of any consumer report or investigative consumer report that RHI may obtain about me.

**For New York Residents**: I understand that, upon written request, I will be informed whether or not a consumer report or an investigative consumer report was requested by RHI and, if such a report was requested, informed of the name and address of the credit reporting agency that furnished the report. With regard to "investigative consumer reports," I further understand that when I receive the name and address of the consumer reporting agency, I may request a copy of such report by contacting such agency.

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20006.*

### A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20006.**

**You may have additional rights under Maine's FCRA, Me. Rev. Stat. Ann. 10, Sec 1311 et seq.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - o a person has taken adverse action against you because of information in your credit report;
  - o you are the victim of identity theft and place a fraud alert in your file;
  - o your file contains inaccurate information as a result of fraud;
  - o you are on public assistance;
  - o you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the Bureau: | a. Bureau of Consumer Financial Protection<br>1700 G Street NW Washington, DC 20006<br><br>b. Federal Trade Commission: Consumer Response Center –<br>FCRA<br>Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br><br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050<br><br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br><br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br><br>d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO) |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Department of Transportation<br>400 Seventh Street SW Washington, DC |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>1925 K Street NW Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F St NE Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or<br>Federal Trade Commission: Consumer Response Center – FCRA Washington, DC |

**PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1786.22**

*The following provisions of the California Civil Code explain how a California resident may review files maintained by an investigative consumer reporting agency:*

(a) An investigative consumer reporting agency shall supply files and information required under Section 1786.10 during normal business hours and on reasonable notice.

(b) Files maintained on a consumer shall be made available for the consumer's visual inspection, as follows:

  (1) In person, if he appears in person and furnishes proper identification. A copy of his file shall also be available to the consumer for a fee not to exceed the actual costs of duplication services provided.

  (2) By certified mail, if he makes a written request, with proper identification, for copies to be sent to a specified addressee. Investigative consumer reporting agencies complying with requests for certified mailings under this section shall not be liable for disclosures to third parties caused by mishandling of mail after such mailings leave the investigative consumer reporting agencies.

  (3) A summary of all information contained in files on a consumer and required to be provided by Section 1786.10 shall be provided by telephone, if the consumer has made a written request, with proper identification for telephone disclosure, and the toll charge, if any, for the telephone is prepaid by or charged directly to the consumer.

(c) The term "proper identification" as used in subdivision (b) shall mean that information generally deemed sufficient to identify a person. Such information includes documents such as a valid driver's license, social security account number, military identification card, and credit cards. Only if the consumer is unable to reasonably identify himself with the information described above, may an investigative consumer reporting agency require additional information concerning the consumer's employment and personal or family history in order to verify his identity.

(d) The investigative consumer reporting agency shall provide trained personnel to explain to the consumer any information furnished him pursuant to Section 1786.10.

(e) The investigative consumer reporting agency shall provide a written explanation of any coded information contained in files maintained on a consumer. This written explanation shall be distributed whenever a file is provided to a consumer for visual inspection as required under Section 1786.22.

(f) The consumer shall be permitted to be accompanied by one other person of his choosing, who shall furnish reasonable identification. An investigative consumer reporting agency may require the consumer to furnish a written statement granting permission to the consumer reporting agency to discuss the consumer's file in such person's presence.

EXHIBIT D

# CONSENT TO SUBSTANCE ABUSE TESTING

I have registered with Robert Half International Inc. or one of its subsidiaries or divisions ("RHI") to obtain assistance in securing temporary employment. I understand I am being considered for an assignment with a client ("Client") and that Client requires applicants submit to a substance abuse test. I understand my refusal to give consent or a positive result on the substance abuse test will make me ineligible for assignment with Client. I further understand my choice not to provide my consent may not disqualify me from or adversely affect my opportunity to be considered for other assignments. In my desire to fulfill Client's condition of assignment, I hereby agree to the following:

1.      I knowingly and voluntarily consent to the substance abuse test that Client has requested of me for controlled substances, which may include alcohol. I agree to provide any specimens and samples needed to complete the substance abuse test.

2.      I authorize the release of the results of my substance abuse test to RHI, the Client that requested the test, and any doctor, medical personnel, hospital, medical center, clinic, and any individuals involved with my substance abuse test. I further authorize RHI to release my test results to state unemployment agencies, to RHI's workers' compensation insurer(s), and when required by law.

3.      I consent to the use of my substance abuse test results in determining whether RHI will place me with Client. If I test positive on the substance abuse test, I may not be assigned to Client. I understand that certain Clients may permit me to begin an assignment before undergoing a substance abuse test and my refusal to submit to any substance abuse test or a positive test result will disqualify me from assignments with Clients that require such tests and possibly from other assignments depending on the circumstances of any such positive substance abuse test result. I understand that if I test positive for drugs or alcohol following an on-the-job accident, I may be ineligible for workers' compensation benefits.

4.      I hereby release and discharge RHI and all those involved with this substance abuse test, including the collection site, testing laboratory, Client, and each of their officers, directors, shareholders, employees, and agents, from any and all liabilities, claims or demands arising from or related to the substance abuse test. This release includes, but is not limited to the taking and testing of my sample for the substance abuse test, the release or disclosure of the substance abuse test results to RHI or by RHI to the requesting Client or a third party, the conducting of the substance abuse test, and any adverse employment action due to the results of the test. This release also includes, but is not limited to, all claims of defamation, invasion of privacy, unlawful detention or any other tort or contract claim.

5.      This consent shall remain valid for a period of one year after the date indicated below, unless I revoke it in writing earlier. I shall personally deliver any revocation to RHI on the date it is signed by me.

**My signature below acknowledges my understanding of and voluntary concurrence with the terms and procedures specified above.**


_____          _____
Applicant's Name                          Date


_____
Applicant's Signature


DRUG SCREEN CONSENT FORM 040109

# EXHIBIT E

☑ Applicant/Consumer (/applicants/)   ◉ Worldwide (/worldwide)   ↦ Login (https://ows01.hireright.com/login)

🔍 Search   ☎ 800-400-2761 (tel:800-400-2761)   ✉ Contact Us (/contact-us)

Home (/)  /  Resources (/resources)  /  FCRA Compliance (/resources/fcra-compliance)

# FCRA Compliance

Accuracy, Fairness and Protection

When you work with HireRight, you can be assured that we operate in full compliance with the governing standards in our industry. Here's a list of just some of the industry-governing Acts, organizations and laws which we comply with:

## FCRA Compliance

The Federal Fair Credit Reporting Act (FCRA) (http://www.ftc.gov/os/statutes/fcrajump.shtm) is designed to protect individuals by promoting accuracy, fairness, and privacy of information in the files of every Consumer Reporting Agency (CRA). Most CRAs are credit bureaus that gather and provide information about individuals - such as if they pay their bills on time or have filed bankruptcy - to creditors, employers, and landlords. Companies that perform pre-employment screening services, such as HireRight, are also governed by the FCRA, as are the employers that use HireRight's background screening services.

HireRight provides FCRA compliance information and online templates of all letters and forms necessary to comply with FCRA employment background screening requirements, including:

- Applicant Disclosure and Consent forms
- Adverse Action letters
- Summary of Consumer Rights

## ADA Compliance

HireRight operates in compliance with the Americans With Disabilities Act (ADA), which prohibits employers from discriminating against people with disabilities who are qualified to perform essential job functions.

## California Consumer Credit Law Compliance

HireRight operates in compliance with the California Consumer Credit Law (Speier Act), which restricts the reporting of age, marital status, race, color or creed on employment reports for consumers that have a current California address.

## California Legislator's AB655 and AB1068

On January 1, 2002 the California Legislature's AB655 became effective, amending both the California Consumer Reporting Agencies Act and Investigative Consumer Reporting Agencies Act ("ICRA").

This bill changed a number of provisions affecting the provision of Investigative Consumer Reports for employment purposes. Note: AB655 has been amended.

## Compliance with Canadian Reporting Regulations

HireRight follows the tenets set forth in the Canadian Privacy Act with regard to the protection of applicant information for employment screening purposes. In addition, HireRight provides the necessary forms required for applicant consent for criminal, credit and driving records reporting as defined by the Ministry of Transportation (MOT), the Canadian Police Information Centre (CPIC) and governing bodies of the individual Canadian provinces and territories (e.g. provincial departments of motor vehicles).

## Employment Drug Screening Compliance

HireRight is a certified member and is in compliance with the regulations published by the following organizations:

- Substance Abuse Program Administrators Association (SAPAA)
- Drug and Alcohol Testing Industry Association (DATIA)

## Private Investigation Licensing Information

For a listing of State Private Investigation Licensing information for HireRight, Inc., please click here. (http://www.altegrity.com/License-Information.aspx)

## Additional Compliance

HireRight's reports allow employers to comply with the screening requirements of various government agencies and legislation, including:

- Federal Aviation Administration (FAA)
- Nuclear Regulatory Commission (NRC)
- Department of Transportation (DOT)
- Securities and Exchange Commission (SEC)

> Overview (/resources)

> Resource Library (/resources/library)

> Blog (http://www.hireright.com/blog)

> HireRight Newsletter (/resources/newsletter)

> Industry Fast Facts (/resources/industry-fast-facts)

> Employment Law (/resources/employment-law)

> FCRA Compliance (/resources/fcra-compliance)

> Screening Glossary (/resouces/screening-glossary)

### HireRight

> Why HireRight (/why-hireright)
> Solutions (/solutions)
> Resources (/resources)
> About Us (/about-us)
> Contact Us (/contact-us)
> Careers (/careers)

### Customer Support

> Login (https://ows01.hireright.com/login/)
> User Group (http://hirerightusergroup.ning.com/)

### Applicant/Consumer

> Get a copy of your background report (/applicants/view/request-copy-background-report-dac-report)
> Dispute the accuracy of your report (/applicants/view/background-report-dac-report-dispute-accuracy)

### Privacy

> Privacy Policy (/legal/privacy-policy)

### HireRight Around the World

HireRight services reach more than 240 countries and territories around the globe.

### HireRight Newsletter

Tips and best practices to invigorate your recruiting & background screening programs.

Enter emai    Subscribe

### Follow HireRight

(https://twitter.com/hireright)(https://www.facebook.com/hireright)(https://www.linkedin.com/company/hireright)(https://plus.google.com/+hireright)(http://www.hireright.com/blog)

> Data Security
(/legal/data-
security)
> Legal Policy
(/legal/legal-
policy)
> Safe Harbor
(/legal/safe-
harbor)

Copyright © 2005-2015 HireRight, Inc. All Rights Reserved